**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **REGINALD WATKINS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | NO. 3:13-CV-2472-BF |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Reginald Watkins brings this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Commissioner's decision is REVERSED.

### Background

Plaintiff alleges that he is disabled due to a variety of ailments, including an intellectual disability, depression, anxiety, hypertension, a shoulder injury, and pain in his back and knees. After his application for DIB was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on January 18, 2012. At the time of the hearing, Plaintiff was 37 years old. He has a tenth grade education and was in special education classes. He also has past work experience as a forklift operator, a laborer, a machining helper, a loader, a janitor, and a driver. Plaintiff has not engaged in substantial gainful activity since April 16, 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to DIB.  Although the medical evidence established that Plaintiff suffered from degenerative disc disease, scoliosis of the lumbar spine, and borderline intellectual functioning, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, but could not return to his past relevant employment.  Relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was capable of working as a fast food worker, a photocopy machine operator, and an office cleaner – jobs that exist in significant numbers in the national economy.  Plaintiff appealed that decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal district court.

In two general grounds for relief, Plaintiff contends that: (1) substantial evidence does not support the ALJ's determination that Plaintiff's mental impairment failed to satisfy the requirements of Listing 12.05; and (2) the ALJ improperly rejected the opinions of two examining physicians. The issues have been fully briefed by the parties, and this appeal is ripe for determination.

**Legal Standards**

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits.  *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

**Analysis**

Plaintiff challenges the ALJ's determination that his mental impairment does not meet or medically equal the criteria of Listing 12.05B or 12.05C, which pertain to "intellectual disability."[1] Tr. at 23. Listing 12.05 provides, in pertinent part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or

---

[1] Effective August 1, 2013, Listing 12.05 refers to "intellectual disability" rather than "mental retardation." *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013). The substance of Listing 12.05, including the criteria, remains otherwise unchanged.

      B.      A valid verbal, performance, or full scale IQ score of 59 or less; or

      C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

      D.      A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

            1.      Marked restriction of activities of daily living; or

            2.      Marked difficulties in maintaining social functioning; or

            3.      Marked difficulties in maintaining concentration, persistence, or pace; or

            4.      Repeated episodes of decompensation, each of extended duration.

*See* 20 C.F.R. pt. 404, Subpt. P., App. 1 § 12.05. To meet the requirements of this listing, the claimant must satisfy the diagnostic elements of the introductory paragraph as well as the specific factors of paragraph A, B, C, or D. *See Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009); *Arce v. Barnhart*, 185 F. App'x 437, 438 (5th Cir. 2006).

      The record in this case reflects that Plaintiff achieved a verbal IQ score of 61 (in a range of 57-67), a nonverbal IQ score of 63 (in a range of 58-72), and a full scale IQ score of 59 (in a range of 56-64) on a formal intelligence test administered by Donald E. Winsted III, Ph.D., a licensed psychologist, as part of a consultative examination performed on December 6, 2012. *See* Tr. at 267-68. *Id*. at 267. Although the Commissioner acknowledges that Plaintiff's full scale IQ score of 59 is sufficient to meet the severity requirement for presumptive disability under Listing 12.05B, and

his verbal and nonverbal IQ scores, when considered in combination with the other severe physical impairments recognized by the ALJ, are sufficient to meet the severity requirement under Listing 12.05C, *see* Def. Br. at 11, the ALJ refused to consider whether Plaintiff was disabled under either Listing because he determined that Plaintiff's IQ scores were "invalid." Tr. at 23, n.1. More specifically, the ALJ explained that he rejected Plaintiff's IQ scores because Dr. Winsted failed to indicate that such scores were "valid" and because the scores were inconsistent with the ALJ's own determination of Plaintiff's level of adaptive functioning and ability to live independently. *Id.*

Dr. Winsted, however, never questioned the validity of Plaintiff's scores due to malingering, lack of effort, or any other reason. To the contrary, his report stated that "[t]here was a 95% certainty that [Plaintiff's] IQ scores fell within the indicated ranges." *Id.* at 268. Dr. Winsted also unequivocally stated in response to a post-hearing questionnaire that Plaintiff's IQ scores from the December 2012 consultative examination were "valid." *Id.* at 330. Moreover, as discussed herein, Plaintiff's low IQ scores are fully consistent with other evidence in the record that Plaintiff has significant deficits in adaptive functioning. Thus, the ALJ's reasons for rejecting Plaintiff's IQ scores as invalid are not supported by substantial evidence, and the ALJ's failure to consider whether Plaintiff was disabled under Listing 12.05B or 12.05C was error. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ has a duty to analyze plaintiff's impairments under every applicable listing); *Bailey v. Astrue*, No. 3:10-CV-1187-BD, 2011 WL 4048394, at *4 (N.D. Tex. Sept. 12, 2011) (ALJ must consider Listing 12.05C where record includes evidence of low IQ and other severe impairments).

An ALJ's failure to consider a specific listing is harmless only if the record shows such listing is not met. *See, e.g., Audler*, 501 F.3d at 448-49. In this case, substantial evidence exists to

6

indicate that Plaintiff meets the diagnostic criteria of the introductory paragraph of Listing 12.05 – significantly subaverage general intellectual functioning with deficits in adaptive functioning, the onset of which occurred before he reached 22 years of age – as well as the specific factors of paragraph B or C.  For example, Dr. Winsted opined that Plaintiff functions in the "Extremely Low range of intelligence" and has "poor" ability to complete tasks in a timely and appropriate manner or cope with stress at work or at home.  *Id.* at 268-69.  Plaintiff can perform basic academic skills only at the first- and second-grade levels.  *Id.* at 268.  He requires assistance managing his finances and using medical, financial, and welfare services.  *Id.* at 68, 268.  He lived with his mother until her death, and she was his primary source of support.  *Id.*  After his mother died, Plaintiff was able to live independently for less than one year before he had to move in with his aunt because he could not pay his bills and his utilities were disconnected.  *Id.* at 65, 67.  Dr. Winsted also provisionally diagnosed Plaintiff with a learning disorder and mild mental retardation.  *Id.* at 269.  This diagnosis was contingent upon collaborative data from school records and information regarding Plaintiff's adaptive living skills.  *Id.*  Plaintiff's school records show that he was placed in special education classes and was exempted from state-mandated standardized testing.  *Id.* at 272-75.  Plaintiff also consistently reported that he struggled in school.  *Id.* at 53, 225, 265. He was retained twice and began receiving special education services at the end of his fourth grade year.  *Id.*  He stayed in school until he was 20 or 21, but he only completed the tenth grade.  *Id.* at 53.  He could not complete the GED coursework.  *Id.*  Laura K. Brutting, Ph.D. administered the Vineland Adaptive Behavior Skills test to Plaintiff on October 3, 2011.  *Id.* at 320.  Plaintiff's results revealed that he was functioning at an adaptive behavior level of "1," which is consistent with a diagnosis of mild mental retardation.  *Id.*  Dr. Brutting opined that her assessment of Plaintiff's adaptive living skills

7

was a "valid reflection of [his] level of functioning," and she endorsed her assessment as a Determination of Mental Retardation. *Id.* Individuals diagnosed with mild mental retardation, like Plaintiff, are assumed to have significant deficits in adaptive functioning. *Durden v. Astrue*, 586 F. Supp. 2d 828, 836 (S.D. Tex. 2008) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV at 41 (4th ed., Text Revision, 2000)).

The Commissioner argues that Plaintiff does not have the requisite deficits in adaptive functioning based on his work history and activities of daily living. The record shows that Plaintiff worked at several medium, semiskilled jobs, including jobs as a forklift operator, a laborer, a machining helper, a loader, a janitor, and a driver. *Id.* at 33, 75. However, the record also shows that Plaintiff did not perform these jobs to competitive standards. Gloria Means, the Activity Director at Best Friends Adult Activity Center, Inc., which was Plaintiff's last place of employment, stated that she hired Plaintiff because she "was a friend of [Plaintiff's] mother and he needed help." *Id.* at 203. Ms. Means further stated that Plaintiff did not perform his work "up to the standards of a competitive employee and required more supervision than other workers in similar positions. If he did not have a special relationship with the hiring authority, he would not have been hired and/or he would have been terminated due to the need for additional supervision." *Id.* Given the circumstances of this prior employment, Plaintiff's work history is not probative of his adaptive functioning abilities. *See Bailey v. Astrue*, No. 3-10-CV-1187-BD, 2011 WL 4048394, at *4 (N.D. Tex. Sep. 12, 2011) (plaintiff's work history not indicative of adaptive functioning where teacher's aide position was part of a "Vocational Adjustment Class" for high-school special-education students and file clerk position required minimal skills); *see also Durden*, 586 F. Supp. 2d at 837-38 (individual's history of performing unskilled work does not necessarily refute finding that she had

8

deficits in adaptive functioning). The Commissioner and the ALJ also focus on Plaintiff's ability to perform certain activities of daily living, including the ability to bathe, dress, and feed himself, use the stove and microwave to prepare small meals, do household chores like vacuuming, and drive in heavy traffic or unfamiliar places. Tr. at 66-67, 169-71, 203, 224. The fact that Plaintiff demonstrates adequate functioning in certain areas, however, does not make up for deficits in other areas. Plaintiff introduced sufficient evidence substantiating his deficits in adaptive functioning, including the results of his consultative examinations, his school records, and his own testimony.

In view of the strong evidence of intellectual disability, the hearing decision must be reversed so the Commissioner can evaluate, in the first instance, whether Plaintiff meets the requirements of Listing 12.05B and 12.05C. *Thompson v. Colvin*, No. 3:13-CV-2616-O, 2013 WL 5450282, *3 (N.D. Tex. Sept. 30, 2013) (remand required where ALJ failed to properly consider whether plaintiff's impairments met or equaled Listing 12.05); *Pritchett v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-00309-BF, 2012 WL 1058123, at *8 (N.D. Tex. Mar. 29, 2012) (same); *Adams v. Astrue*, No. 4-10-CV-0216-BD, 2011 WL 2550772, at *3 (N.D. Tex. June 27, 2011) (same).[2]

## CONCLUSION

The final decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED, September 23, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[2] Because this case must be remanded for appropriate consideration of Plaintiff's intellectual impairment under Listing 12.05, the Court pretermits consideration of Plaintiff's alternative grounds for relief.

9